**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

AMILCAR OLIVERIO PEREZ-GUZMAN,

      Petitioner,

v.                                           No. 1:26-cv-00017-MLG-GJF

MELISSA ORTIZ, in her official capacity
as Acting Warden of Torrance County
Detention Center, et al.

      Respondents.

**ORDER REQUESTING GOVERNMENT RESPONSE TO PETITIONER'S MOTION
FOR TRO AND MOOTING RESPONDENT'S MOTION FOR EXTENSION OF TIME
<u>TO RESPOND TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS</u>**

This matter is before the Court on Petitioner Amilcar Oliverio Perez-Guzman's Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, and Motion for Temporary Restraining Order ("Motion for TRO"), Doc. 10. Perez-Guzman is a Guatemalan native and citizen who entered the United States without inspection in 2005. Doc. 1 at 2 ¶ 2. He was arrested by U.S. Immigration and Customs Enforcement ("ICE") in June 2025 and charged with removability pursuant to Immigration and Nationality Act ("INA") 212(a)(6)(A)(i). *See* Doc. 1 at 2 ¶ 3; Doc. 8 at 2; Doc. 8-2. Since then, he has been detained at Torrance County Detention Facility in Estancia, New Mexico, pending his final removal. Doc. 1 at 2 ¶ 3.

On December 5, 2025, Perez-Guzman appeared before Immigration Judge ("IJ") Ralph Girvin for a custody redetermination hearing. *See* Doc. 8 at 2; *see also* Doc. 1 at 2 ¶ 5; Doc. 8-3. IJ Girvin denied Perez-Guzman's bond request on the following grounds: "lack of jurisdiction[;] in the alternative[,] respondent presents a flight risk and his form of relief is speculative and is scheduled for a final hearing in 12 days." *See* Doc. 8-3.

1

Perez-Guzman filed his Petition with the Court on January 6, 2026, seeking (1) immediate release, or, in the alternative, (2) "a prompt and constitutionally adequate bond hearing before an Immigration Judge." Doc. 1 at 2, 16 ¶ 8. As grounds for his requested relief, Perez-Guzman alleges that his prolonged detention without opportunity for an individualized bond hearing violates both the INA and the Fifth Amendment Due Process Clause of the U.S. Constitution. *See* Doc. 1 at 9-10, 12-13 ¶¶ 37-38, 45-46. He argues against the United States' reliance on *Matter of Yajure Hurtado*[1] to classify him as an "applicant[] for admission" that is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). Doc. 1 at 8, 10 ¶¶ 31-32, 39 (citing 29 I.&N. Dec. 216 (BIA 2025)). Instead, Perez-Guzman asserts that he is entitled to a bond hearing because he "is in the same posture as the Petitioners in *Maldonado Bautista*," a case from the Central District of California in which "[t]he court concluded that individuals arrested inside the United States and detained under § 1226(a) were being unlawfully deprived of the procedural protections guaranteed by that statute, including a bond hearing before a neutral adjudicator." Doc. 1 at 10-11 ¶¶ 40-41 (citing *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 2670875 (C.D. Cal. July 28, 2025)).[2]

---

[1] A recent Board of Immigration Appeals ("BIA") precedential decision holding that section 235(b)(2)(A) of the INA, codified at 8 U.S.C. § 1225(b)(2)(A), precludes IJs from granting bond requests to people who are present in the United States unlawfully. *Id.*

[2] Perez-Guzman cites to Judge Sunshine S. Sykes's Order Granting Petitioners' Ex Parte Application for Temporary Restraining Order and to Show Cause. *See id.* Following this ruling, Judge Sykes granted petitioners' motion for partial summary judgment, vacating the Department of Homeland Security's ("DHS") policy undergirding *Matter of Yajure Hurtado* as unlawful and certifying a Bond Eligible Class consisting of "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter . . . without inspection; (2) were not or will not be apprehended upon arrival, and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the . . . initial custody determination." *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025). The Court does not read Perez-Guzman's original Petition to allege membership in the nationwide *Maldonado Bautista* class. *See* Doc. 1 at 11 ¶ 41 (indicating "Petitioner is *in the same posture* as

The United States responded on January 28, 2026,[3] arguing that (1) Perez-Guzman is properly detained under § 1225(b) pursuant to *Matter of Yajure Hurtado*, and (2) even if the Court did find that § 1226(a) applies to Perez-Guzman, "the appropriate relief would be an order

---

the Petitioners in *Maldonado Bautista*" rather than claiming actual membership (emphasis added)). It is not until his reply brief that Perez-Guzman makes a formal assertion about membership. *See* Doc. 9 at 2 ("Petitioner is a member of the Bond Eligible Class certified in *Bautista v. Noem*, and under the controlling statutory framework and persuasive authority interpreting it, his detention is governed by 8 U.S.C. § 1226(a), which entitles him to a bond hearing."). And "arguments raised for the first time in a reply brief are generally deemed waived." *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011); *see also Stump v. Gates*, 211 F.3d 527, 533 ("This court does not ordinarily review issues raised for the first time in a reply brief."). But even if the Court were to accept Perez-Guzman's membership argument—membership in the *Maldonado Bautista* class would still not grant him the relief he seeks. *See Maldonado Bautista*, 2025 WL at *30 ("In certifying the Bond Eligible Class, the Court only extends its declaratory judgment regarding the illegality of the DHS Policy for purposes of [an] APA claim. The Court cannot order nationwide release or bond hearings . . . to those confined outside this judicial district."); *id.* ("To the extent Petitioners seek habeas relief for class members in immigration detention outside of this judicial district, the Court reiterates such an action would be ultra vires; there is no habeas jurisdiction to do so.").

[3] On January 14, 2026, the Court ordered Respondents to "respond to the Petition" within ten days of receiving its Order to Show Cause "why the requested relief should not be granted." Doc. 3 at 2. The Court instructed the Parties to use Federal Rule of Civil Procedure 6(a) to calculate that deadline. *See id.* at 2 n.2. Accordingly, the United States' deadline to respond to Perez-Guzman's Petition was January 26, 2026. On January 27, 2026, one day after the Government's deadline to respond and show cause for denying Perez-Guzman's Petition, the Respondents filed an Opposed Motion for Extension of Time, Doc. 5. Federal Rule of Civil Procedure 6(b)(1) instructs the Court that it may, "for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." "Courts consider the following factors to determine whether excusable neglect exists: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Royal Pac. Ltd. v. Faith Elec. Manufacture Co.*, No. 1:17-cv-00357-MLG-JFR, 2023 WL 6554333, at *1 (D.N.M. Sept. 6, 2023) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993)). After weighing these four factors, the Court finds the Respondents' failure to act was a result of excusable neglect. *Compare* Doc. 6 at 2 ("Further delay prejudices Petitioner by prolonging . . . ongoing immigration detention and the continued denial of an opportunity to seek an individualized bond hearing"), *with* Doc. 5 at 1 ¶ 2 (justifying a one-day delay because "[a]ssigned counsel for Respondents require[d] additional time to investigate and respond to Petitioner's allegations, including requesting and reviewing all relevant documents").

enforcing the alternative finding of the Immigration Judge ("IJ") denying bond because Petitioner is a flight risk." *See* Doc. 8 at 1-2 (citing Doc. 8-3).

On March 13, 2026, Perez-Guzman filed his Motion for TRO requesting that the Court enjoin Respondents from continuing to detain him and order his immediate release. *See* Doc. 10. As part of his Motion for TRO, Perez-Guzman contends that he: (1) is likely to succeed on the merits because he is being detained under the improper statutory framework; (2) faces immediate and irreparable harm because his continued unlawful detention without an individualized bond hearing undercuts his due process rights and separates him from his family; and (3) the balance of equities and public interest favor him because loss of liberty and separation from family overwhelmingly outweighs the minimal burden that would be imposed on the Government to release him from detention. *See id.* at 3-7.

The statutory authority for Perez-Guzman's current detention—and by extension, the Court's authority to grant the requested forms of relief—is unclear based on the Parties' briefing thus far. The Government's response to Perez-Guzman's initial Petition included a copy of an IJ-issued removal order dated January 6, 2026. Doc. 8-4. The Court appreciates that once an order of removal becomes administratively final, §§ 1225(b) and 1226(a) no longer apply. Instead, the statutory framework that governs post-removal detention—§ 1231(a)(6)—becomes operative and the noncitizen[4] *must* be held in custody for a 90-day removal period. See *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) (citing § 1231(a)(2)). "Subsequently, as the post-removal-period statute provides, the Government 'may' continue to detain a[] [noncitizen] who still remains here or release that [noncitizen] under supervision" once the Government's 90-day removal period

---

[4] "This [Order] uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); *see generally* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

4

expires. *Id.* (citing § 1231(a)(6)). But the Government's Response to the original Petition and the Petitioner's Motion for TRO both neglect to inform the Court whether Perez-Guzman's removal order has become administratively final or if it was appealed to the Board of Immigration Appeals ("BIA"). *See* Doc. 8-4 at 4 (establishing that Perez-Guzman reserved his right to appeal IJ Steven Meredith's removal order by February 6, 2026). This information is critical for the Court at this stage of the litigation, as it dictates whether Perez-Guzman's detention is governed by a pre-removal-order or post-removal-order statute, all of which is ultimately dispositive as to Perez-Guzman's current eligibility for bond relief.

Therefore, the Court orders the United States to file an expedited response to Perez-Guzman's Motion for TRO no later than Tuesday, March 24, at 5:00 pm MT clarifying its position as to its current statutory authority for detaining him. This response shall also apprise the Court as to whether Perez-Guzman appealed his January 6, 2026, removal order and, if so, the current status of those appellate proceedings. To reduce further delay on reaching the merits of Perez-Guzman's Motion for TRO and Petition, the Court, having reviewed the Parties' submissions and the relevant law, hereby holds that to the extent that Perez-Guzman's removal order remains on appeal with the BIA and is not administratively final, § 1226(a)—not § 1225(b)—governs his detention.[5]

---

[5] The Court has repeatedly found that petitioners like Perez-Guzman (who has been residing in the United States for over twenty years) cannot be considered "an applicant for admission." *See, e.g., Cortez-Gonzalez v. Noem,* No. 2:25-cv-00985-MLG-KK, 2025 WL 3485771, at *3-4, *6 (D.N.M. Dec. 4, 2025); *Diaz-Cruz v. Dedos,* No. 1:25-cv-01117-MLG-JMR, 2025 WL 3628517, at *2 (D.N.M. Dec. 12, 2025); *Gonzalez Ramos v. Dedos,* No. 1:25-cv-00975-MLG-KRS, 2025 WL 3653928, at *2-5 (D.N.M. Dec. 17, 2025). The "vast majority" of courts around the country have agreed. *See Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) (collecting 350 cases "decided by over 160 different judges sitting in about fifty different courts spread across the United States" rejecting the position that all noncitizens—even those whom have been residing in the United States for years—must be detained until their removal proceedings).

5

Accordingly, if Perez-Guzman is being detained under § 1226(a), the United States must inform the Court of its authority to grant Perez-Guzman's request for a bond hearing given a marked change in material circumstances since his last bond hearing on December 5, 2025. *Compare* Doc. 8-3 (documenting IJ Girvin's alternative determination that Perez-Guzman presents a flight risk) *with* Doc. 8-4 at 2 (evidencing Perez-Guzman's willingness as recently as January 6, 2026, to cooperate with deportation proceedings by agreeing to voluntarily depart the country following an administratively final order of removal[6] and posting a bond of $500 to secure this commitment). If Perez-Guzman wishes to file a reply, he must do so by Thursday, March 26, at 5:00pm MT. The Court will determine whether a hearing is necessary once briefing is complete.[7]

Lastly, for the reasons explained at *supra* note 3, the Court finds the United States' Motion for Extension of Time, Doc. 5, to respond to Perez-Guzman's Petition for Writ of Habeas Corpus, Doc. 1, moot.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

[6] "The voluntary departure period has not yet begun while Petitioner pursues his right to appeal." *Rodriguez-Novoa v. Lyons*, No. 1:25-cv-01073-SMD-GBW, 2025 WL 4592301, at *5 (D.N.M. Dec. 23, 2025). *See generally* § 1229c(b)(1); 8 C.F.R. § 1240.26(c)(1)(iv) (finding a grant of voluntary departure appropriate if "[a]t the conclusion of the removal proceedings . . . [t]he [noncitizen] has established by clear and convincing evidence that the [noncitizen] has the means to depart the United States *and has the intention to do so*." (emphasis added)); § 1240.26(c)(4) ("Because the purpose of the voluntary departure bond is to ensure that the [noncitizen] does depart . . . as promised, the failure to post the bond . . . may be considered in evaluating whether the [noncitizen] should be detained based on risk of flight[.] . . .").

[7] The Court generally does not permit remote appearances. All interested counsel must appear for hearings in person.