**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

---

AMILCAR OLIVERIO PEREZ-GUZMAN,

      Petitioner,

v.                                      No. 1:26-cv-00017-MLG-GJF

MELISSA ORTIZ, in her official capacity
as Acting Warden of Torrance County
Detention Center, et al.

      Respondents.

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, MOOTING
PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND
<u>MOOTING RESPONDENTS' MOTION FOR EXTENSION OF TIME</u>**

      This matter is before the Court on Petitioner Amilcar Oliverio Perez-Guzman's Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, and Motion for Temporary Restraining Order ("Motion for TRO"), Doc. 10. Perez-Guzman is a Guatemalan native and citizen who entered the United States without inspection in 2005. Doc. 1 at 2 ¶ 2. He was arrested by U.S. Immigration and Customs Enforcement ("ICE") in June 2025 and charged with removability pursuant to Immigration and Nationality Act ("INA") 212(a)(6)(A)(i) (as codified at 8 U.S.C. § 1182). *See* Doc. 1 at 2 ¶ 3; Doc. 8 at 2; Doc. 8-2. Since then, he has been detained at Torrance County Detention Facility in New Mexico pending final adjudication of his removal order. Doc. 8 at 2. *See generally* Doc. 8-4 at 1-2 (denying Perez-Guzman's application for cancellation of removal under INA § 240A(b)(1) (as codified at 8 U.S.C. § 1229b), finding Perez-Guzman inadmissible, and granting application for post-conclusion voluntary departure under INA § 240B(b) (as codified at 8 U.S.C. § 1229c)); Doc. 13 at 2 ("As Petitioner's appeal is pending before the [Board of Immigration Appeals] ("BIA"), the January 6, 2026, removal order is not yet final.").

1

On December 5, 2025, Perez-Guzman appeared before Immigration Judge ("IJ") Ralph Girvin for a custody redetermination hearing. Doc. 8 at 2, *see also* Doc. 1 at 2 ¶ 5; Doc. 8-3. IJ Girvin denied Perez-Guzman's bond request on the following grounds: "lack of jurisdiction[;] in the alternative[,] respondent presents a flight risk and his form of relief is speculative and is scheduled for a final hearing in 12 days." *See* Doc. 8-3.

Perez-Guzman filed his Petition for habeas relief with the Court on January 6, 2026, seeking (1) immediate release, or, in the alternative, (2) "a prompt and constitutionally adequate bond hearing before an Immigration Judge." Doc. 1 at 16. As grounds for his requested relief, Perez-Guzman alleges that his prolonged detention without opportunity for an individualized bond hearing violates both the INA and the Fifth Amendment Due Process Clause of the U.S. Constitution. *See* Doc. 1 at 9-10, 12-14 ¶¶ 37-38, 45-46. He argues against the United States' reliance on *Matter of Yajure Hurtado*[1] to classify him as an "applicant[] for admission" that is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). 29 I.&N. Dec. 216 (BIA 2025). *See* Doc. 1 at 8, 10 ¶¶ 31-32, 39. Instead, Perez-Guzman asserts that he is entitled to a bond hearing because he "is in the same posture as the Petitioners in *Maldonado Bautista*," a case from the Central District of California in which "[t]he court concluded that individuals arrested inside the United States and detained under § 1226(a) were being unlawfully deprived of the procedural protections guaranteed by that statute, including a bond hearing before a neutral adjudicator." Doc.

---

[1] A recent BIA precedential decision holding that section 235(b)(2)(A) of the INA, codified at 8 U.S.C. § 1225(b)(2)(A), precludes IJs from granting bond requests to people who are present in the United States unlawfully. *Id.*

2

1 at 10-11 ¶¶ 40-41 (citing *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 2670875 (C.D. Cal. July 28, 2025)).[2]

The United States responded on January 28, 2027,[3] arguing that (1) Perez-Guzman is properly detained under § 1225(b) pursuant to *Matter of Yajure Hurtado*, and (2) even if the Court

---

[2] Perez-Guzman cites to Judge Sunshine S. Sykes's Order Granting Petitioners' Ex Parte Application for Temporary Restraining Order and to Show Cause. *See id.* Following this ruling, Judge Sykes granted petitioners' motion for partial summary judgment, vacating the Department of Homeland Security's ("DHS") policy undergirding *Matter of Yajure Hurtado* as unlawful and certifying a Bond Eligible Class consisting of "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter . . . without inspection; (2) were not or will not be apprehended upon arrival, and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the . . . initial custody determination." *Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1127(C.D. Cal. 2025). The Court does not read Perez-Guzman's original Petition to allege membership in the nationwide *Maldonado Bautista* class. *See* Doc. 1 at 11 ¶ 41 (indicating "Petitioner is *in the same posture* as the Petitioners in *Maldonado Bautista*" rather than claiming actual membership (emphasis added)). It is not until his reply brief that Perez-Guzman makes a formal assertion about membership. *See* Doc. 9 at 2 ("Petitioner is a member of the Bond Eligible Class certified in *Bautista v. Noem*, and under the controlling statutory framework and persuasive authority interpreting it, his detention is governed by 8 U.S.C. § 1226(a), which entitles him to a bond hearing."). And "arguments raised for the first time in a reply brief are generally deemed waived." *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011); *but compare Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (enumerating the reasons the "court does not ordinarily review issues raised for the first time in a reply brief," chief among them being that "[i]t robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result"), *with* Doc. 8 at 16 (briefly responding to Perez-Guzman's comparison between himself and the petitioners in *Maldonado Bautista* by addressing why *Maldonado Bautista* is not binding nor applicable to Perez-Guzman's Petition). But even if the Court were to accept Perez-Guzman's membership argument—membership in the *Maldonado Bautista* class would still not grant him the relief he seeks. *See Maldonado Bautista*, 813 F. Supp. 3d at 1125 ("In certifying the Bond Eligible Class, the Court only extends its declaratory judgment regarding the illegality of the DHS Policy for purposes of [an] APA claim. The Court cannot order nationwide release or bond hearings . . . to those confined outside this judicial district."); *id.* ("To the extent Petitioners seek habeas relief for class members in immigration detention outside of this judicial district, the Court reiterates such an action would be *ultra vires*; there is no habeas jurisdiction to do so."). The Court agrees that Perez-Guzman is entitled to an individualized bond hearing pursuant to § 1226(a). But he already received a bond redetermination hearing and the IJ made a factual determination, in the alternative, that he presents a flight risk. *See infra* pp. 4-5.

[3] On January 14, 2026, the Court ordered Respondents to "respond to the Petition" within ten days of receiving its Order to Show Cause "why the requested relief should not be granted." Doc. 3 at

3

did find that § 1226(a) applies to Perez-Guzman, "the appropriate relief would be an order enforcing the alternative finding of the Immigration Judge ("IJ") denying bond because Petitioner is a flight risk." *See* Doc. 8 at 1-2 (citing Doc. 8-3).

On March 13, 2026, Perez-Guzman filed his Motion for TRO requesting that the Court enjoin Respondents from continuing to detain him and order his immediate release. *See* Doc. 10. As part of his Motion for TRO, Perez-Guzman contends that: (1) he is likely to succeed on the merits because he is being detained under the improper statutory framework; (2) faces immediate and irreparable harm because his continued unlawful detention without an individualized bond hearing undercuts his due process rights and separates him from his family; and (3) the balance of equities and public interest favor him because loss of liberty and separation from family overwhelmingly outweighs the minimal burden that would be imposed on the Government to release him from detention. *See id.* at 3-7.

---

2. The Court instructed the parties to use Federal Rule of Civil Procedure 6(a) to calculate that deadline. Doc. 3 at 2 n.2. Accordingly, the United States' deadline to respond to Perez-Guzman's Petition was January 26, 2026. On January 27, 2026, one day after the Government's deadline to respond and show cause for denying Perez-Guzman's Petition, the Respondents filed an Opposed Motion for Extension of Time, Doc. 5. Federal Rule of Civil Procedure 6(b)(1) instructs the Court that it may, "for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Courts consider the following factors to determine whether excusable neglect exists: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See Royal Pac. Ltd. v. Faith Elec. Manufacture Co.*, No. 1:17-cv-00357-MLG-JFR, 2023 WL 6554333, at *1 (D.N.M. Sept. 6, 2023) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993)). After weighing these four factors, the Court finds the Respondents' failure to act was a result of excusable neglect. *Compare* Doc. 6 at 2 ("Further delay prejudices Petitioner by prolonging . . . ongoing immigration detention and the continued denial of an opportunity to seek an individualized bond hearing") *with* Doc. 5 at (explaining a one-day delay because "[a]ssigned counsel for Respondents requires additional time to investigate and respond to Petitioner's allegations, including requesting and reviewing all relevant documents").

Under similar circumstances, this Court has granted a bond hearing pursuant to § 1226(a) as an appropriate remedy for INA and due process violations that stem from misclassifying petitioners, like Perez-Guzman, as subject to § 1225(b)'s mandatory-detention requirements.[4] *See Cortez-Gonzalez v. Noem*, 811 F. Supp. 3d 1287, 1295-98 (D.N.M. 2025); *Diaz-Cruz v. Dedos,* No. 1:25-cv-01117-MLG-JMR, 2025 WL 3628517, at \*2 (D.N.M. Dec. 12, 2025); *Gonzalez Ramos v. Dedos,* No. 1:25-cv-00975-MLG-KRS, 2025 WL 3653928, at \*2-5 (D.N.M. Dec. 17, 2025). In so doing, the Court has joined the "vast majority" of courts that have concluded that § 1226(a)—not § 1225(b)(2)—governs the detention of noncitizens like Perez-Guzman who has been residing in the United States for over twenty years. *See* Doc. 1 at 6 ¶ 24; *see also Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases concluding that "§ 1225(b)(2)(A) applies only to noncitizens who are actively, i.e., affirmatively, 'seeking admission' to the United States" and not to noncitizens who have been residing in the United States for several years); *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 & n.22 (S.D.N.Y. 2025) (collecting 350 cases "decided by over 160 different judges sitting in about fifty different courts spread across the United States" rejecting the position that all noncitizens—even those whom have been residing in the United States for years—must be detained until their removal proceedings).

---

[4] "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). Given that § 1226(a) is controlling, Perez-Guzman is entitled—as a right—to an individualized bond hearing. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d. 1231, 1241-42 (D.N.M. 2025); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-01031-KG-JFR, 2025 WL 3187432, at \*3 (D.N.M. Nov. 14, 2025).

Contrary to other immigration habeas petitions that have been before this Court, however, Perez-Guzman *did* have his bond redetermination request considered by the Immigration Court on the merits (albeit, as a finding in the alternative, since the Immigration Court's principal position was that it did not have jurisdiction to grant bond in the first place). *See* Doc. 8-3. This Court cannot review an IJ's fact-based determination that a person is not entitled to release following a bond hearing. That is consistent with other decisions from this district. *See, e.g.,* Order Denying Petitioner's Request for Additional Relief, *Martinez-Hernandez v. Lyons, et al.*, No. 2:25-cv-01094-DHU-KBM (D.N.M. filed Jan. 29, 2026); Order Denying Emergency Motion to Enforce, *Requejo Roman v. Castro et al.*, No: 2:25-cv-01076-DHU-JHR (D.N.M. filed Jan. 15, 2026). This preference also accords with binding legal authority that a district court may not review an IJ's discretionary bond determinations. *See* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the . . . denial of bond or parole."); *cf.* 8 C.F.R. § 1003.10(a) (noting that IJs are appointed by the Attorney General to "act as the Attorney General's delegates in the cases that come before them"). As such, the Court may not review the IJ's factual findings regarding flight risk, nor can it review the IJ's application of those findings to make a final bond-eligibility determination.

The Court's habeas jurisdiction over bond-eligibility determinations is strictly limited to constitutional challenges to the "extent of the Government's detention authority under the [INA's] 'statutory framework' as a whole." *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018); *see also Demore v. Kim*, 538 U.S. 510, 516-17 (2003) ("[R]espondent does not challenge a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release. Rather, respondent challenges the [entire] statutory framework that

6

permits his detention without bail."). In all other instances which inherently involve the IJ's discretionary judgment—like this one—the proper channel for appealing an IJ's determination of bond ineligibility is an appeal to the BIA. *See* 8 C.F.R. § 1236.1(d)(3). Petitioners can also request, via motion to the Immigration Court, a subsequent bond redetermination at any time by adequately alleging a material change in the circumstances of their case since the prior bond hearing. *See* Doc. 13 ("Under 8 C.F.R. § 1003.19(e), a detainee may request a subsequent bond redetermination *from the Immigration Judge*, but the request 'shall be considered only upon a showing that the [noncitizen]'s circumstances have changed materially since the prior bond redetermination.'" (emphasis added)); *see also* 8 C.F.R. § 1003.19(a)-(c).

For the foregoing reasons, the Court hereby denies Perez-Guzman's Petition for immediate release. Doc. 1. Since Perez-Guzman's Motion for TRO requests the same relief, denial of his Petition renders his Motion for TRO moot. *Compare* Doc. 1 and Doc. 10. Respondent's Motion for Extension of Time, Doc. 5, is also mooted. *See supra* note 3.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

7